[L. A. No. 14693. In Bank.—January 21, 1935.]

WILLIAM H. KUHLEMEIER, Respondent, v. COUNTY OF LOS ANGELES, Appellant.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellant.

Daniel E. Farr and W. Torrence Stockman for Respondent.

S. Laz Lansburgh and S. Joseph Theisen, as *Amici Curiae* on Behalf of Respondent.

WASTE, C. J.—Plaintiff brought this action under section 3804 of the Political Code to recover $2,652.44 from the defendant county, such sum representing the aggregate of alleged excessive taxes collected from plaintiff on certain factory equipment for the years 1929, 1930 and 1931. The complaint alleged that this excess was the result of a "clerical error" on the part of the county assessor in fixing the book value of the property. The cited code section provides for relief in the event of such an error. That portion of the tax here sought to be recovered was not paid "under protest" and we are therefore not presently concerned with the provisions of section 3819 of the Political Code.

A general demurrer to the complaint was interposed and overruled. The county having thereafter failed to answer within the time provided therefor, judgment was entered for the plaintiff, from which this appeal was taken. The appeal now comes before us both on the merits and on motion to affirm.

So far as material here, section 3804, *supra*, provides that "any taxes, penalties or costs thereon heretofore or hereafter paid more than once, or heretofore or hereafter erroneously

or illegally collected or *any taxes heretofore or hereafter paid upon an assessment in excess of the actual cash value of the property so assessed by reason of a clerical error of the assessor as to the excess in such cases,* or any taxes heretofore or hereafter paid upon an erroneous assessment of improvements on real estate not in fact in existence, when said taxes became a lien, may, by order of the board of supervisors, be refunded by the county treasurer. . . . "

Plaintiff's claims for the asserted excess having been rejected by the board of supervisors of the county, this action was commenced. The italicized portion of the above code section is here pertinent. Preliminarily, it should be stated that the defendant county contends, and the plaintiff concedes, that under the decisions of this court no relief will be granted, in the absence of fraud, where a complaint for recovery of alleged excessive taxes is based merely on an overvaluation or an excessive assessment of property unless relief has been first sought from the county board of equalization, except where, as provided in the cited code section, the overvaluation is the result of a "clerical error" of the assessor. With this principle in mind, the plaintiff urges that the complaint herein states a cause of action for the recovery of an excess attributable to a "clerical error" of the assessor in determining the book value of plaintiff's taxable property. In support of its general demurrer the county argues that the complaint is deficient in that it fails to allege facts showing such "clerical error" but, on the contrary, merely indicates that the assessor followed and adopted the book value of the property as the same appears on the books kept by plaintiff's bookkeeper. It is also urged that the complaint fails to allege, as required by the code section, that the asserted erroneous assessment was in "excess of the *actual cash value* of the property". While originally some point was also made as to the asserted insufficiency of the complaint to allege the verification of the claims sued on, it has been since conceded by the defendant county that the claims were, in fact, duly verified and the desire is expressed that the determination of the case not "turn upon this point".

 Inasmuch as excessive taxes paid as the result of an overassessment are recoverable under section 3804, *supra*, only when such overassessment is attributable to a "clerical

error" of the assessor we now direct our attention to the allegations of the complaint with a view to determining whether they disclose such clerical error. In this particular the complaint alleges: "That in arriving at the assessed valuation of all property in Los Angeles county of like kind, to-wit: factory equipment, during the said years, the said assessor discounted the book valuation of said property twenty per cent and fifty per cent off, or, in other words, assessed said property at a net of forty per cent of the book valuation thereof. That such method was the general usage, custom and formula of said assessor during said years and the same was used in computing all personal property of like kind and character in the county of Los Angeles, and the said assessor endeavored and attempted to assess the aforementioned property of this plaintiff by such formula. That by usage, custom and formula of said assessor in said years, the book valuation of property was determined by depreciating the cost of said property ten per cent per year accumulated. That the said assessor used said formula in computing the book valuation of all property of like kind and character as above mentioned in the county of Los Angeles, and the said assessor attempted and endeavored to compute the book valuation of the property above mentioned belonging to this plaintiff according to said formula.

"That due to a faulty system of bookkeeping and clerical errors therein committed by the bookkeeper of this plaintiff, which faulty system of bookkeeping and clerical errors occurring therein were adopted and continued by the said assessor, an excessive net book valuation was reflected by the books of the plaintiff as follows:

"The bookkeeper of plaintiff erroneously depreciated the said original cost, regardless of time of purchase, only the amount of $1,000.00 because of her habit of depreciating the said equipment at the rate of $500.00 per month during the fiscal year of plaintiff's business which commenced on the first day of January and terminated upon the 31st day of December each year and at the end of the year would credit the depreciation reserve account and charge all accumulated depreciation for said year to a proprietorship or investment account and that, because thereof, the depreciation reserve account, upon the first Monday in March of each of said years, showed only a depreciation of $500.00 for

January, and $500.00 for February, or a total depreciation of $1000.00. That such depreciation reserve was incorrect and in a much less amount than allowed by the assessor and as computed by the above set forth formula. That the said clerical error was copied and continued by the said assessor and resulted in an erroneous assessed valuation of the said factory equipment of this plaintiff.''

In our opinion the foregoing allegations of the complaint setting forth in detail the specific facts from which plaintiff deduces his conclusion that the assessment and excessive taxes were the result of a ''clerical error'' on the part of the assessor, do not warrant or support such a conclusion. In fact, the allegations negative any theory of ''clerical error''. On the contrary they constitute, at best, but a criticism of the method or theory of bookkeeping adopted by plaintiff's bookkeeper. It cannot be said that the latter's book-value figure, which the assessor adopted, was the result of clerical or other error. Rightly or wrongly computed, it was the bookkeeper's deliberate and intended estimate of the value of the property. This being so, the adoption of such figure by the assessor cannot reasonably be said to be a ''clerical error'' on his part. Nor do the facts pleaded warrant the conclusion stated in the complaint that the assessor ''attempted to assess the aforementioned property of this plaintiff by such [assessor's] formula'' and ''attempted and endeavored to compute the book valuation of the property . . . according to said formula''. The specific allegation of what actually transpired negatives the pleader's conclusion for the complaint very definitely indicates that the assessor did not compute, nor did he intend to compute, the book valuation of plaintiff's property by his, or any other, formula but, instead, was content to take, and did take, plaintiff's own figure. If, in so doing, he acted to the prejudice of plaintiff, the remedy therefor lay elsewhere than under the provisions of section 3804, *supra*, for, construed as a whole, the complaint fails to allege a cause of action founded on a ''clerical error'' of the assessor in fixing the assessment value of plaintiff's property. The error of the assessor, if any, was one of substance or of judgment and was not clerical in character.

In construing a statute somewhat similar to our section 3804, *supra*, and providing for the correction of assessments

and the refunding of taxes improperly collected by reason of "any manifest clerical or other error in any assessments or returns", the New York courts have declared that "'clerical' errors are mentioned to distinguish them from, and exclude errors of substance, of judgment, or of law", the latter being described as "errors affecting the merits of the assessment". (*Hermance* v. *Supervisors of Ulster County*, 71 N. Y. 481, 486; *People* v. *Forrest*, 96 N. Y. 544, 548; *In re Morewood Realty Holding Co.*, 241 App. Div. 841 [271 N. Y. Supp. 392, 396].) As stated above, the allegations of the complaint herein disclose that the error of the assessor, if any, in adopting the book value determined by plaintiff's bookkeeper, rather than computing such value for himself, as was his alleged custom, cannot by any stretch of the imagination be characterized as clerical, but rather goes to the substance of the assessment and to the propriety of the assessor's judgment in so doing.

In conclusion, we experience no difficulty with the case of *Pacific Coast Co.* v. *Wells*, 134 Cal. 471 [66 Pac. 657], cited by the respondent as being "on all fours with the present case." At the time that case was decided section 3804, *supra*, did not provide, as it now does, for a refund where an excessive assessment resulted from a "clerical error" of the assessor. In the cited case plaintiff's bookkeeper had inadvertently reported its solvent credits at $323,776.51 instead of $223,776.51, thus causing plaintiff to pay a tax on nonexistent property of the value of $100,000. Section 3804, *supra*, then provided for a refund of taxes "erroneously or illegally collected", whereupon this court by writ of mandate directed the county auditor to refund the excess, as provided in a resolution of the board of supervisors, as a tax "on property that had no existence". However, even had the code section then provided for a refund based on a "clerical error" of the assessor, the cited case, as distinguished from the cause now before us, clearly presented a situation wherein a "clerical error" had occurred by reason of plaintiff's bookkeeper inadvertently using the figure $323,776.51 when he intended $223,776.51, which clerical error was copied and adopted by the assessor in fixing the assessment. In the present case, as already stated, neither plaintiff's bookkeeper nor the assessor had fallen into a "clerical error", in the true meaning of that term,

but, on the contrary, the former had intentionally adopted a certain system of bookeeping some of the figures of which the latter had apparently just as deliberately adopted. Under the circumstances, any impropriety in the conduct of either cannot be said to be the result of a "clerical error". Our conclusion makes it unnecessary to discuss other contentions advanced by the parties.

The motion to affirm is denied and the judgment is reversed with directions to the court below to enter its order sustaining the demurrer to the complaint.

Shenk, J., Langdon, J., Curtis, J., Preston, J., and Seawell, J., concurred.